IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

———————

DEAF SMITH COUNTY GRAIN
PROCESSORS, INC.,

        Plaintiff,

v.                                                                    No. CIV 97-0041 BB/LFG

SPRINGER ELECTRIC COOPERATIVE,
INC.,

        Defendant.

## **OPINION**

THIS MATTER comes before the Court on Defendant's Memorandum of Law (Doc. 27, filed January 27, 1998) and Plaintiff's Contingent Motion to Amend Complaint (Doc. 32, filed March 5, 1998). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that Plaintiff will not be required to amend the complaint; that Defendant's duty to construct the power line in a safe manner was nondelegable; and that it is premature to decide what the exact measure of damages will be should Plaintiff prevail at trial on the liability question.

### I. Facts and Procedural History

This case arises out of a range fire that burned over 7,000 acres of pasturage in northeastern New Mexico. Also consumed in the fire were a number of trees and a large amount of fencing. The fire began when one line of a 69,000-volt power line broke and fell to the ground. Plaintiff filed suit to recover for the damages caused by the fire, claiming that Defendant failed to exercise due care in constructing or maintaining the high-voltage power line. One defense raised

by Defendant consists of Defendant's claim that the power line was originally built by an independent contractor for whose negligence, if any, Defendant is not responsible. After discovery was completed, Plaintiff filed a proposed jury instruction to the effect that Defendant may not delegate its safety responsibilities to an independent contractor. Plaintiff also indicated its intent to claim damages for the cost of replacing the burned fence and replanting the burned trees, as well as other damages to which it might be entitled. Defendant then filed a memorandum of law raising two issues that, according to Defendant, should be resolved prior to trial: (1) whether Plaintiff's proposed jury instruction is inappropriate under the circumstances of this case; and (2) whether Plaintiff's claim for replacement damages should be restricted. In response, Plaintiff filed a contingent motion to amend the complaint to include the nondelegability claim, should the Court decide such action is necessary. This opinion addresses the questions under New Mexico law, which the parties agree is controlling.

## II. Nondelegable Duty Question

The parties argue the applicability of the doctrine of nondelegability discussed in Saiz v. Belen School Dist., 113 N.M. 387, 827 P.2d 102 (1992). Saiz established that in New Mexico, a person who employs an independent contractor to perform inherently dangerous work or to install an inherently dangerous facility has a nondelegable duty to ensure that reasonable precautions are taken to prevent harm to third parties. That is, if reasonable precautions are not taken and a third party suffers harm as a result, the employer of the independent contractor will not be able to avoid liability by relying on the fact that the work was done by the contractor rather than the employer. Defendant contends Plaintiff should have included this theory in its complaint or in an amended complaint, because it is essentially a new cause of action. Plaintiff, on the other hand, argues that

2

the theory is merely a response to Defendant's affirmative defense, and need not be pled. The Court agrees with Plaintiff.

The procedural posture of this case is clear. Plaintiff filed a complaint alleging that Defendant was liable for the fire caused by Defendant's high-voltage power line. Defendant answered by claiming, among other defenses, that it was not responsible for the alleged defect in the power line which allegedly caused the fire, because Defendant had employed an independent contractor to construct the power line. In response to that affirmative defense, Plaintiff now maintains that Defendant's duty to construct a safe power line was nondelegable and, if the independent contractor failed to use reasonable care in its construction, Defendant is liable for that failure. The question of Defendant's liability for the negligence of another was raised by Defendant's own affirmative defense and there was no need for Plaintiff to respond to that defense, either by anticipating it in the original complaint or by filing an amended complaint alleging the nondelegability issue. See, e.g., Tregenza v. Great American Communications Co., 12 F.3d 717, 718 (7th Cir. 1993) (a plaintiff is not required to negate a possible affirmative defense in the complaint); Smith v. Carey Canadian Mines, Ltd., 609 F.Supp. 639, 642, fn.5 (E.D.Pa. 1985) (plaintiffs not required to file a reply to the answer in order to preserve argument concerning defendant's affirmative defense); United States v. Gray, 552 F.Supp. 943, 946 (N.D.Ill. 1982) (same); Saiz, 113 N.M. at 401, 827 P.2d at 116 (plaintiff not required to raise nondelegability issue in the pleadings, because plaintiff had claimed defendant was completely liable for the decedent's injuries). Plaintiff's failure to file an amended complaint raising the issue will not foreclose Plaintiff from now arguing it.

Defendant also argues that, under the facts of this case, the nondelegability principle should not apply as a matter of law. Defendant relies on the fact that the high-voltage power line involved in this case broke in a rural area, which drastically reduced the danger of personal injury or death. Defendant also points to the fact that the only result of the incident was a range fire that destroyed vegetation and fences, as opposed to the electrocution and death that occurred in the Saiz case. The Court disagrees with the proposition that Defendant's duty to construct a high-voltage power line that was reasonably safe was delegable to an independent contractor.

It is true that a portion of the Saiz opinion discusses the fact that the electrical supply line in that case was located in an area of "public accommodation" and analyzes the peculiar risks flowing from that fact. Nothing in the opinion, however, indicates that location in a densely populated area is a necessary predicate for a finding that a high-voltage power line poses an inherent danger. The opinion defines inherently dangerous work as that which is very likely to cause harm if reasonable precautions are not taken against the peculiar risk or special danger posed by the work. 113 N.M. at 396, 827 P.2d at 111. The Court has no trouble concluding that a 69,000-volt power line poses special dangers that are very likely to become manifest if reasonable precautions are not taken to prevent the line from breaking. See, e.g., Cerretti v. Flint Hills Rural Elec. Coop. Ass'n, 837 P.2d 330, 335 (Kan. 1992) (recognizing that "a high-voltage power line is one of the most dangerous things known to mankind"); Keegan v. Grant County Pub. Utility Dist. No. 2, 661 P.2d 146, 148 (Wash.App. 1983) (business of transmitting high-voltage electricity is an extremely dangerous and life-threatening endeavor); Ferguson v. Northern States Power Co., 239 N.W.2d 190, 193 (Minn. 1976) (transmission of high-voltage electricity is highly dangerous activity presenting a risk of unusually serious harm); Brigham v. Moon Lake

4

Elec. Ass'n, 470 P.2d 393, 395 (Utah 1970) (high-tension transmission wire is one of the most dangerous things known to man); cf. New Mexico Electric Service Co. v. Montanez, 89 N.M. 278, 281, 551 P.2d 634, 637 (1976) (implicitly agreeing with lower court's conclusion that working on electric lines is inherently dangerous activity, but reversing finding that nondelegable duty extends to employees of the independent contractor engaged in the activity).

Although the risk of injury to a person, as opposed to property or livestock, may be lower if a high-voltage line comes down in a rural area as opposed to a residential neighborhood, there is still a high risk of some type of serious property damage or personal injury if a 69,000-volt power line falls in such an area. This risk justifies imposing a nondelegable duty on a power company to take reasonable precautions in erecting and maintaining a high-voltage power line. See, e.g., Ruhs v. Pacific Power & Light, 671 F.2d 1268, 1272 (10th Cir. 1982) (stating that as electricity is an ultrahazardous instrumentality, an electric company's duty to maintain safe premises is nondelegable), abrogated on other grounds, Melton v. City of Oklahoma City, 879 F.2d 706, 724, fn. 25 (10th Cir. 1989); Gordy v. City of Canton, Miss., 543 F.2d 558, 563 (5th Cir. 1976) (citing Mississippi law to the effect that duty of a power company to protect third persons from obvious danger is nondelegable); Gnau v. Union Elec. Co., 672 S.W.2d 142, 146 (Mo.App. 1984) (duty of utility to use highest degree of care to prevent injury is nondelegable); Keegan, 661 P.2d at 152 (duty of electrical utility to take reasonable means to protect those who come into contact with electric transmission lines is not delegable to independent contractor).

The Court is of the view that the discussion in Saiz regarding an area of public accommodation was a result of the particular facts of that case, involving a property owner not in the business of transmitting and selling electricity but which had simply hired an independent

5

contractor to construct a lighting system. In such a situation, different public policy interests might have led to a different result on the delegability issue if the landowner's facility had been located in an isolated area. Where the employer of the independent contractor is a power company, however, and the power company contracts to have a 69,000-volt power line erected, the situation is quite different. The Court finds that New Mexico courts would follow the lead of cases such as Keegan and hold that the power company's duty to take reasonable precautions to ensure that the power line is constructed in as safe a manner as possible is not delegable to an independent contractor, even if the power line is located in a rural area.[1]

### III. Measure of Damages

Defendant argues that the measure of damages in this case should be limited to the value of Plaintiff's property before the fire compared to the value after the fire, plus the incidental damages caused by one season of lost grazing. Plaintiff, on the other hand, claims that the proper measure of damages should include the cost of replacing the fence that was destroyed, as well as the cost of replanting approximately 125 trees that were burned in the fire. The Court finds that it is premature to decide this issue, because there are factual issues that must be resolved before the proper measure of damages can be determined.

---

[1] The Court notes Defendant's argument that the power line did not fall for over forty years after it was erected, even with the allegedly faulty splice. Defendant maintains that this proves the power line is not inherently dangerous. Defendant is certainly free to argue this point as to the merits of Plaintiff's claim–that is, that the long period without any incident establishes that reasonable precautions were taken to prevent the power line from causing harm. However, it is still the case that erecting and operating a 69,000 volt power line is an inherently dangerous activity, simply because of the unusually high risk that serious injury will occur if reasonable precautions are not taken. In other words, Defendant's argument is relevant to the merits of Plaintiff's case but not to the delegability question.

There appears to be no hard-and-fast damages rule that has been applied by the courts when non-commercial trees are destroyed. Some courts choose the before-and-after rule, while others allow recovery of the reasonable costs of replanting the trees. See, e.g., Osborne v. Hurt, 947 P.2d 1356, 1359 (Alaska 1997). Still others allow the costs of replanting, but only up to a ceiling measured by the diminution in value of the land or the original value of the land. 1 Dan B. Dobbs, Law of Remedies § 5.2(1), at 716-23 (2d ed. 1993). Factors that are relevant to choosing the applicable measure of damages include the following: (1) whether the land is used for residential or recreational purposes, as opposed to business purposes; (2) whether there is some other reason peculiar to the owner and this particular plot of land that argues in favor of replanting the trees rather than simply awarding damages based on lost value of the land; and (3) any disproportionality that may exist between the costs of replanting the trees and the diminution in value of the land. See Osborne; Keitges v. VanDermeulen, 483 N.W.2d 137, 142 (Neb. 1992); Kebschull v. Nott, 714 P.2d 993, 994-95 (Mont. 1986); Garey Const. Co., Inc. v. Thompson, 697 S.W.2d 865, 867 (Tex.App. 1985); Gross v. Jackson Township, 476 A.2d 974, 976 (Pa.Super. 1984). The Court has heard little evidence concerning any of the above factors,[2] and will therefore not decide at this point whether the proper measure of damages in this case should include the cost of replanting the trees or should be limited to the before-and-after rule.

Defendant also argues that the cost of the new fence that has apparently been erected on the ranch cannot be awarded in its entirety, because the destroyed fence was old and in poor condition in many places. The Court agrees that a damage award must not grant Plaintiff a

---

[2]Other than the fact that the land involved is ranch land that is apparently used primarily for grazing, which is a fact that might militate against allowing costs of replanting trees but is not, at this point at least, dispositive of the issue.

windfall. See Dobbs, § 5.2(7) at 734. Therefore, it is possible that a before-and-after measure of damages would adequately account for the destruction of the previous fence. To the extent it may not, some allowance will be necessary for replacement cost of the fence. It is virtually certain, however, that the entire cost of the new fence can not be allowed, as it would place Plaintiff in a better position than prior to the accident. See, e.g., Bolton v. Missouri-Kansas-Texas R.R. Co., 373 S.W.2d 169, 172-73 (Mo.App. 1963) (measure of damages for destruction of a fence is the actual value of the fence as it stood); Barnes v. Young, 382 S.W.2d 580, 583 (Ark. 1964) (replacement cost of new fence was not proper way to establish damages for destruction of fence; plaintiff is entitled only to replacement of fence in substantially same condition as when it was destroyed); Dobbs, § 5.2(7) (in most cases, full cost of replacing destroyed property will not be allowed; instead, adjustment must be made to account for enhanced value provided by replacing destroyed property with brand-new item). Until the Court hears the evidence, however, the Court cannot determine whether the before-and-after rule will constitute adequate compensation for the destroyed fence, or whether some percentage of the replacement cost of the fence will better compensate Plaintiff.

**Conclusion**

Based on the foregoing, the Court will not require Plaintiff to file an amended complaint, and will not allow Defendant to escape liability by arguing that the negligence, if any, in constructing the power line was that of an independent contractor. In addition, the Court will not at this time decide whether the proper measure of damages in this case is the before-and-after rule, some type of replacement-cost award, or a combination of the two.

An Order in accordance with this Opinion will issue.

Dated this 25th day of March, 1998.

_____
BRUCE D. BLACK
United States District Judge