IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DEAF SMITH COUNTY GRAIN
PROCESSORS, INC.,

        Plaintiff,

v.                                                          No. CIV 97-0041 BB/LFG

SPRINGER ELECTRIC COOPERATIVE,
INC.,

        Defendant.

## MEMORANDUM OPINION

THIS MATTER comes before the Court for consideration of Defendant's motion for judgment as a matter of law, remittitur, or a new trial (Doc. 53); Defendant's motion to review the costs assessed by the Court Clerk (Doc. 64); and Plaintiff's motion to amend the judgment to include pre-judgment interest (Doc. 51). After considering the submissions of the parties and the relevant law, the Court will hold as follows, for the reasons discussed below: (1) the motion for new trial or judgment as a matter of law will be denied, provided Plaintiff accepts a remittitur of a portion of the compensatory damages awarded as a result of the May 18, 1996 fire; (2) the costs assessed by the Court Clerk will be affirmed, except for the minor modifications discussed below; and (3) the motion for pre-judgment interest will be denied.

**Motion for Judgment as a Matter of Law, Remittitur, or New Trial**

**February 26, 1996 Fire:** Defendant argues the compensatory damages award resulting from the February 26 fire was not supported by the evidence presented at trial. Defendant maintains that the evidence showed the fence that was burned in the fire was older, and was

replaced with a newer fence that will last longer. This argument ignores the testimony that the burned fence had been built with high-quality cedar posts, while the new fence was built with posts of a lesser grade. In addition, there was evidence that the old fence had been well-maintained and was of high quality, and that well-maintained fences last indefinitely. This was not a situation of a less valuable item of property being replaced with a more valuable, because it was newer, item. Instead, there was evidence to support a jury determination that the full replacement cost of the fence was equal to, or even less than, the value of the destroyed fence.

     Defendant also argues that punitive damages were not justified by the circumstances surrounding the February fire. However, the New Mexico Supreme Court has held that as the level of risk rises, conduct that might be merely negligent in other circumstances could demonstrate a culpable mental state sufficient to support a punitive damages award. Clay v. Ferrellgas, Inc., 118 N.M. 266, 269, 881 P.2d 11, 14 (1994). A cavalier attitude toward managing a dangerous product may raise the wrongdoer's conduct to recklessness. Id. There was ample evidence in this case that Defendant, as a corporate entity, had a cavalier attitude toward problems with its electric lines. Plaintiff's expert witness, Judd Clayton, testified that Defendant's inspection program was seriously deficient, that any reasonable electric cooperative would immediately repair the "bird caging" problems, that the deficiency with the particular splice that failed should have been readily apparent, and that Defendant's inspection program and attitude toward repairing defects in its lines displayed a casual indifference to the safety and welfare of property and people. This testimony alone was sufficient to establish that Defendant, at the management level as well as other levels, had the requisite culpable mental state to support an award of punitive damages. Furthermore, the amount of such damages awarded by the jury,

approximately one-sixth of the compensatory damages award for the February fire, was well within the acceptable constitutional limits established in this Circuit. See Continental Trend Resources, Inc. v. OXY USA Inc., 101 F.3d 634, 643 (10th Cir. 1996). Due to the fact that the punitive damages award is a fraction of the compensatory damages, the Court need not delve into the other factors set out in OXY USA, except to note that they do not militate against the amount of punitive damages awarded in this case.

**May 18, 1996 Fire:** Defendant maintains that the compensatory damages awarded as a result of this fire are so excessive as to require remittitur. While the appropriate legal standard is unclear, the Court is compelled to agree. Virtually the only damages caused by the May fire were those resulting from the loss of 65 elm trees burned in the fire. The Court's instructions allowed the jury to assess the value of the trees destroyed in both fires. As to replacement costs of those trees, however, the jury was allowed to consider only those trees that contributed to the operation of the ranch or increased the value of the ranch. There was no evidence that any of the 65 elm trees burned in the May fire increased the value of the ranch or contributed to its operation. Therefore, replacement costs of those trees should not have been awarded by the jury. Defendant's own expert, however, did testify that Plaintiff should receive some compensation for the value of the elms, and did not deny they had some value. The question then becomes, what measure of value should the jury have used to arrive at a compensatory-damages figure? There was testimony from Plaintiff's expert, Mr. Sher, that the 65 elms had a value, on a per-inch basis, of $51,960. This figure was based on the amount a landscaper would charge per inch for elms of a size capable of being replanted. However, there was no testimony that full-grown elms such as the ones burned in the fire could, or would, be replanted. Mr. Sher also testified that it would

3

cost $20,880 to replace these 65 trees with smaller elms. It appears, therefore, that the jury based its damage figure on its estimate of the value of the elm trees in place, or on replacement cost plus some amount of money for the work involved in replacing the elms.

The difficulty with both of these methods of assessing damages is that the damage figure arrived at by the jury is higher than the value of the entire land affected by the May fire. Defendant acknowledges that "20 to 100 acres" of land were burned in the fire, and Plaintiff does not contradict that figure. Plaintiff's representative, Clifford Skiles, testified that the market value of the ranch land is $175 per acre. There was no testimony that the elm trees had some special value that might give them an economic value higher than the market valuation of the ranch -- for example, that elms of this size could be sold on an open market or had a peculiar value due to their location, history, or nature. In fact, the only testimony was to the effect that the elms added nothing to the market value of the ranch. In this circumstance, it would violate the doctrine of economic waste to award damages higher than the market value of the land for trees which had no economic value and would not likely be replaced. See discussion in the Court's prior opinion, concerning replacement costs of non-commercial trees and other vegetation.

It is obvious, however, as Defendant's own expert acknowledged, that the elm trees have some value. The Court is therefore faced with a situation in which the before-and-after rule does not adequately compensate Plaintiff for the loss of a valuable asset, because under that rule Plaintiff would receive no compensation for the loss of the elms -- the ranch as a ranch was just as valuable without the trees as with them. On the other hand, the only firm figures concerning the value of the elms were higher than the market value of the land upon which the trees were located. In addition, the proffered testimony regarding the trees' value was not tied to any

4

situation in which the value could actually be recouped, as it could with a movable asset.  For these reasons, the Court will adopt the middle ground approach and set a ceiling on the value of the trees, measured by the market value of the land upon which the trees were located.  See generally 1 Dan B. Dobbs, Law of Remedies § 5.2(1), at 716-23 (2d ed. 1993) (discussing various approaches adopted by courts when a claim for replacement costs of vegetation has been raised).  Imposing such a ceiling appears to be the preferable, albeit still imperfect, means of balancing (1) the public policy interest in avoiding economic waste; (2) Plaintiff's right to full recovery of the damages suffered; and (3) Defendant's right to pay only those damages actually suffered by Plaintiff.  Accordingly, the Court will order a remittitur of the compensatory damages exceeding $17,500, the market value of the 100 acres burned in the May fire.  Should Plaintiff decline to accept this remittitur, a new trial will be held on the damages issue alone.  See O'Gilvie v. Int'l Playtex, Inc., 821 F.2d 1438, 1447-48 (10th Cir. 1987).

Defendant also maintains that the $150,000 in punitive damages awarded by the jury as a result of the May fire cannot be supported under the principles discussed in Continental Trend Resources, Inc. v. OXY USA Inc., 101 F.3d 634 (10th Cir. 1996).  In OXY, the Tenth Circuit explained that there are three main factors to consider in determining whether a punitive damages award is constitutionally excessive: (1) the degree of reprehensibility of the defendant's conduct; (2) the ratio of the punitive damages award to the actual harm inflicted on the plaintiff; and (3) the comparison between the punitive award and the civil or criminal penalties that could be imposed for comparable misconduct.  101 F.3d at 638; see also F.D.I.C. v. Hamilton, 122 F.3d 854, 861 (10th Cir. 1997).

There was no testimony that Defendant's employees deliberately set the May fire. However, there was testimony that they bypassed the circuit-breaker system with a fuse and then repeatedly energized the line, with the resulting fireball igniting the grass. There was also testimony that this was an extremely dangerous procedure. In addition, one of the employees involved testified that a supervisor employed by Defendant, who was the Springer employee authorized to make such decisions, told the employees to go ahead and by-pass the breaker with a fuse. This case, therefore, involves culpability that is somewhat less than that accorded deliberate misconduct.[1] Given the dangerous nature of the instrumentality, however, and the evidence that the procedure employed was grossly negligent, the degree of reprehensibility in this case must be rated at least average compared to other punitive-damages cases. See, e.g., Hamilton, 122 F.3d at 861-62 (discussing factors considered in analyzing reprehensibility issue). Even after reducing the compensatory damages from $33,000 to $17,500, the ratio of compensatory to punitive damages equals approximately one to eight and one-half. This is less than the one-to-ten ceiling discussed in Hamilton and OXY as an upper limit in economic-injury cases. Furthermore, this case involves a threat to safety, rather than a purely economic threat, and therefore a higher level of punitive damages is warranted. Hamilton. The ratio of compensatory damages to punitive damages, therefore, is within the range authorized by the Tenth Circuit.

---

[1] The Court notes Plaintiff's argument that Defendant's employees committed arson, but rejects that suggestion. There was no testimony that they intended to cause a fire. Instead, they were extremely careless in patrolling the line to locate the fault, and then stubbornly continued to believe the problem lay with a faulty circuit-breaker and wrongly persisted in their attempts to energize the line. These facts do not satisfy the elements of the crime of arson.

Except for Plaintiff's claim that this case involved arson, which the Court has rejected, no civil or criminal penalties that might be applicable to this case have been brought to the Court's attention. This factor, therefore, does not militate in favor of a large award of punitive damages.

After considering the foregoing, the Court does not find that the $150,000 award of punitive damages with respect to the May fire is constitutionally impermissible, and will not reduce it.

Defendant also argues that punitive damages should not have been assessed against it because there was no evidence of ratification, participation, or approval of its employees' dangerously careless conduct with respect to the May fire. As noted above, however, one of the employees who bypassed the breaker by installing a fuse testified that the procedure was authorized beforehand by his supervisor. That employee also testified that the supervisor was the individual at Springer who was empowered to make decisions concerning the proper course to follow in situations such as this one. Thus, there was evidence that a company employee in a managerial position, entrusted with the authority to control employees' actions with respect to faults in a line, approved the unsafe methods employed by Defendant's workers. This evidence was sufficient to allow the jury to find that an employee with managerial capacity, as defined under New Mexico law, was actively involved in the decision to use a grossly negligent procedure that ultimately caused the fire. See Albuquerque Concrete v. Pan Am Services, 118 N.M. 140, 145, 879 P.2d 772, 777 (1994) (person who has discretion to decide what to do, and how it will be done, acts in a managerial capacity). Accordingly, there was a sufficient basis for the jury to award punitive damages against Defendant.

**Motion to Review Costs Assessed by Court Clerk**

7

**Deposition Expenses:** Defendant argues that under the applicable local rule, deposition expenses are only recoverable if they are "reasonably necessary" to the litigation, and the rule defines "reasonably necessary" to mean that a substantial portion of the deposition is admitted into evidence or used for impeachment. Defendant also argues that even though the depositions in question were used for impeachment or other purposes at trial, a "substantial" portion of each deposition was not used. The Court need not engage in a deposition-by-deposition analysis of the percentage of each deposition used at trial. Defendant's argument overlooks the fact that the local rule also states a deposition is reasonably necessary if the Court so determines. D.N.M. LR-CV 54.2(b)(2)(C). The Court finds that the established practice in this district has been to allow deposition costs if any portion of the deposition has been used at trial, as evidence or impeachment. For that reason, the Court will affirm the deposition costs awarded in the Court Clerk's order.

Based on the same established practice, the Court will not award Plaintiff the additional deposition expenses sought for the depositions of Claudio Saenz, Mr. Gutierrez, and Mr. Coleman. Therefore, the Court Clerk's award of deposition costs is affirmed.

**Expert Witness Expenses:** Defendant argues that under the local rule, experts may receive only a per diem and are not entitled to mileage or a subsistence allowance. Although it is possible to read the rule in the manner suggested by Defendant, doing so would mean contradicting 28 U.S.C. § 1821, which establishes the fees any witness shall be paid. Section 1821 applies to both expert witnesses and lay witnesses, and mandates the payment of travel expenses such as mileage, a subsistence allowance, and a per diem. See Gray v. Phillips Petroleum Co., 971 F.2d 591, 593 (10th Cir. 1992) (noting applicability of § § 1821 (b), (c), and

(d) to expert witness); <u>Nebraska Public Power Dist. v. Austin Power, Inc.</u>, 773 F.2d 960, 975 (8th Cir. 1985) (traditional rule under § 1821 has been to limit recovery for expert witness fees to statutory allowances for attendance, mileage, and subsistence).  It appears, therefore, that the portion of the local rule upon which Defendant relies is directed only at the daily witness fee paid to a witness who does not have to remain overnight.  D.N.M. LR-CV 54.2(c)(1)(B).  In any event, the local rule cannot be used to override the applicable statute enacted by Congress.  Defendant's objection to the travel expenses and subsistence expenses allowed for Plaintiff's experts is denied.

**Subsistence for Plaintiff's Employees:** Defendant argues that two of Plaintiff's employees should not have been allowed subsistence expenses because they should be considered parties.  These employees, however, were not personally involved in the outcome of the litigation and were not in positions that would allow them to be considered alter egos of the corporation.  Therefore, their costs were taxable to Defendant.  <u>See</u> <u>WH Smith Hotel Services v. Wendy's Int'l</u>, 25 F.3d 422, 429 (7th Cir. 1994).

Defendant also argues the subsistence fees requested on behalf of the two employees were excessive because one witness was present at the trial for five days and the other three.  This Court has discretion to award costs only for the day or days the witness testifies or can reasonably be expected to testify.  <u>See</u> Bartell, Laura, <u>Taxation of Costs and Awards of Expenses in Federal Court</u>, 101 F.R.D. 553, 577.  The Court determines that having Mr. Hicks "on call" for five days was excessive, and will reduce his subsistence expenses by two days, to $246.  Given the fact that this trial consumed more time and moved much more slowly than was anticipated by either party,

the Court will not reduce the subsistence allowance for Mr. Benavidez. The Clerk's award of costs is affirmed on this point, as modified.

**Interpreter Fees:** Defendant's argument as to this item is correct, since the Claudio Saenz deposition expenses will not be taxed as costs. This item of costs shall not be awarded to Plaintiff. D.N.M. LR-CV 54.2(d)(1).

**Photograph Expenses:** All of the photographs were admitted into evidence, and under the local rule the costs are therefore recoverable costs. D.N.M. LR-CV 54.2(f). The Clerk's assessment of these costs will be affirmed.

### Motion to Amend Judgment to Include Pretrial Interest

Under New Mexico law, the primary purpose of the prejudgment interest is to prevent delay in the litigation. Gonzales v. Surgidev Corp., 120 N.M. 133, 150, 899 P.2d 576, 593 (1995). Defendant was not the cause of any delay in the consummation of this lawsuit. In addition, Defendant's settlement offers were not unreasonable as a matter of law, given the fact that liability and the amount of damages suffered were highly contested issues. Id. Exercising its discretion, the Court will not award prejudgment interest and will deny Plaintiff's motion to amend the judgment to include such interest.

### Conclusion

Pursuant to the foregoing, the Court will deny Defendant's request for a new trial or judgment as a matter of law, provided Plaintiff accepts the proposed remittitur of compensatory damages resulting from the May fire. That remittitur would cap the compensatory damages for the second fire at $17,500. Should Plaintiff refuse to accept the remittitur, a new trial will be granted only with respect to compensatory damages, and only with respect to the May fire.

The Court will reduce the Court Clerk's award of costs by the amount of the interpreter fees, or $201.16. Also, the Court will reduce the subsistence allowance for witness Jeff Hicks to $246.00, a reduction of $208.00. In all other respects, the Court Clerk's order allowing costs will be affirmed.

An Order in accordance with this Memorandum Opinion will issue.

*[signature]*
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE